KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERTO JAYME MEDINA (1),<br>JOSE MARTINEZ-GONZALEZ (2),<br><br>Defendants. | Criminal Case No. 08CR2125-WQH<br><br>Date: August 4, 2008<br>Time: 2:00 p.m.<br>Place: Courtroom 4<br><br>The Honorable William Q. Hayes<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO**<br><br>**(A) SUPPRESS EVIDENCE;**<br>**(B) PRODUCE GRAND JURY TRANSCRIPTS;**<br>**(C) PRESERVE AND INSPECT EVIDENCE;**<br>**(D) COMPEL DISCOVERY; AND**<br>**(E) GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendants' Robert Medina and Jose Martinez-Gonzalez above-referenced Motions. This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

# I

# STATEMENT OF THE CASE

On June 25, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Roberto Jayme Medina and Jose Martinez-Gonzalez ("Defendants") with bringing in illegal aliens for financial gain, transportation of illegal aliens and aiding and abetting, in violation of 8 U.S.C. §§ 1324(a)(2)(B)(ii), 1324(a)(1)(A)(ii) and 1324(a)(1)(A)(v)(II), and 18 U.S.C. § 2. On June 25, 2008, Defendants were arraigned on the Indictment and pled not guilty. On July 16, 2008, Defendant Medina filed motions to (1) suppress evidence, (2) produce grand jury transcripts, (3) preserve and inspect evidence, (4) compel discovery, and (5) grant leave to file further motions. On July 21, 2008, Defendant Martinez filed motions to (1) compel discovery, (2) suppress evidence, (3) join in co-counsel's previously filed pretrial motions, and (4) grant leave to file further motions. The United States files the following response in opposition to Defendants' motions.

# II

# STATEMENT OF FACTS

## A. OFFENSE CONDUCT

On June 9, 2008, at approximately 8:40 p.m., Supervisory Border Patrol Agent S. Pitts, a member of the El Cajon Station Abatement Team, was performing anti-smuggling operations near Campo, California. Agent Pitts observed a green, Jeep Cherokee ("Jeep") pull over to the side of the road with its lights out in an area commonly known as "Split Rock." This area is located approximately five miles east of the Tecate, California, Port of Entry and approximately five hundred yards north of the U.S./Mexico international border.

The driver of the Jeep headed eastbound on State Route 94 ("SR-94") with his headlights off. Agent Pitts observed several individuals attempting to conceal themselves by ducking down in the rear seat of the Jeep. Agent Pitts used his agency radio to communicate with other agents what he had just observed. Senior Border Patrol Agent C. Devenport heard the radio communication and started to drive westbound on SR-94 toward Agent Pitts' location near "Split Rock."

Agent Devenport observed the Jeep, which matched the description given by Agents Pitts, driving eastbound on SR-94 at a high rate of speed. Agent Devenport turned his vehicle around and

headed eastbound on SR-94 behind the Jeep. Agent Devenport noticed that once he began following the Jeep, it started to decelerate rapidly. The driver rapidly applied his brakes several times. Agent Devenport also noticed that the back end of the Jeep was riding extremely low.

Agent Devenport continued to follow the Jeep as it headed north on Buckman Springs Road. Agent Devenport contacted Border Patrol Dispatch and advised them that he would be conducting a vehicle stop on the Jeep at the intersection of Buckman Springs Road and Old Highway 80 in Pine Valley, California. The Jeep turned north onto Old Highway 80 and continued about three hundred yards before pulling over to the side of the road.

At approximately 9:40 p.m., Agent Devenport, with the assistance of Agents Vasquez and Diaz, approached the Jeep and identified themselves as U.S. Border Patrol Agents. Agents questioned all of the occupants of the Jeep, including the driver, later identified as Roberto Jayme Medina, one of the rear passengers, later identified as Jose Martinez-Gonzalez, and thirteen (13) other material witnesses. All of the occupants of the Jeep were arrested and transported to the Border Patrol Station for processing.

**B. <u>DEFENDANTS' ADVISAL OF RIGHTS</u>**

**1. *<u>Defendant Medina</u>***

On June 10, 2008, at approximately 2:31 a.m., Agent Diaz advised Defendant Medina of his constitutional rights pursuant to <u>Miranda</u>. Defendant Medina acknowledged that he understood his rights and exercised his constitutional right to remain silent. Agents ceased all questioning.

**2. *<u>Defendant Martinez</u>***

On June 10, 2008, at approximately 4:04 a.m., Agent Diaz advised Defendant Martinez of his constitutional rights pursuant to <u>Miranda</u>. Defendant Martinez acknowledged that he understood his rights, waived his <u>Miranda</u> rights, and agreed to speak with Agents without the presence of an attorney.

Defendant Martinez admitted that he was a citizen and national of Mexico. He was born in Morelia, Michoacan, Mexico. Defendant Martinez admitted that he did not have any documents that would allow him to enter or remain in the United States. Defendant Martinez stated that he crossed into the United States on June 9, 2008 by going underneath the U.S./Mexico international border fence near the Tecate, California, Port of Entry. Defendant Martinez stated that he was going to pay $2,400.00 to be smuggled to Los Angeles, California.

Defendant Martinez denied being the foot-guide. He also stated that he did not see who was driving the Jeep that he was arrested in.

**C. MATERIAL WITNESS' STATEMENTS**

Material Witnesses Paulo Estrada-Ceja, Jorge Estrada-Ceja, and Conrado Artega-Rodriguez, admitted to being citizens and nationals of Mexico without documents that would allow them to enter or remain in the United States. Each material witness stated that they made arrangements in Tijuana, Mexico, to be smuggled into the United States. The three material witnesses admitted that either they or their family agreed to pay between $2,500 and $2,600 to be smuggled into the United States. All of the material witnesses positively identified Defendant Martinez from a photographic lineup as the foot-guide that crossed the group illegally into the United States. The material witnesses stated that Defendant Martinez instructed the group to follow him and used a radio to communicate with a person on a lookout point. One of the material witnesses positively identified Defendant Medina from a photographic lineup as the driver of the Jeep.

**D. DEFENDANTS' IMMIGRATION HISTORY**

Defendant Medina is a citizen of the United States and resides in San Diego, California.

Defendant Martinez is a citizen and national of Mexico. Records checks reveal that Defendant Martinez has been apprehended approximately six times by U.S. Border Patrol.

**E. DEFENDANTS' CRIMINAL HISTORY**

Defendant Medina has a prior felony conviction on November 7, 2007 for vehicle theft, in violation of California Vehicle Code § 10851(A), and he was sentenced to 20 days jail followed by 3 years of summary probation. On January 29, 2008, Defendant Medina's probation was revoked, reinstated, and modified on different terms.

According to criminal records checks, Defendant Martinez has no criminal convictions.

/ /

/ /

/ /

/ /

/ /

## III

## THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES

### A. DEFENDANTS' MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED

The Defendants contend that the immigration stop and subsequent search of the Jeep Cherokee conducted by Border Patrol agents was unlawful. As discussed below, this contention lacks merit

#### 1. Border Patrol Agents Performed a Lawful Stop of the Vehicle

The Fourth Amendment's prohibition against unreasonable searches and seizures extends to the brief investigatory stop of a motor vehicle. See United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975). In order to satisfy the Fourth Amendment, an investigatory stop by a law enforcement officer may be made only if the officer in question has "a reasonable suspicion supported by articulable facts that criminal activity may be afoot ... ." United States v. Sokolow, 490 U.S. 1, 7 (1989), citing Terry v. Ohio, 392 U.S. 1, 30 (1968). Under Terry and its progeny, law enforcement officers must have at least a reasonable suspicion of criminal activity before stopping a suspect. Terry, 392 U.S. at 30; Delaware v. Prouse, 440 U.S. 648, 653 (1979) (extending the holding in Terry to motor vehicle stops).

This Court must consider "the combination of factors motivating an investigatory stop to determine whether they support a finding of reasonable suspicion under the 'totality of the circumstances.'" United States v. Diaz-Juarez, 299 F.3d 1138, 1141 (9th Cir. 2002), cert. denied, 538 U.S. 934 (2003) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). Such review must include "all relevant factors ... even those factors that, in a different context, might be entirely innocuous." United States v. Fernandez-Castillo, 324 F.3d 1114, 1117 (9th Cir.), cert. denied, 124 S. Ct. 418 (2003). A law enforcement officer may rely on past experience in a special context, like border areas, in identifying the circumstances that contribute to reasonable suspicion. Arvizu, 534 U.S. at 276; United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000) ("An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also 'be grounded in objective facts and be capable of rational explanation.'") (quoting United States v. Michael R., 90 F.3d 340, 346 (9th Cir. 1996).

/ /

The United States directs the Court's attention to the factors that may provide a Border Patrol Agent with reasonable suspicion to perform an immigration stop of a vehicle. These factors include: "(1) the characteristics of the area in which [an officer] encounter[s] a vehicle; (2) the vehicle's proximity to the border; (3) patterns of traffic on the particular road and information about previous illegal border crossings in the area; (4) whether a certain kind of car is frequently used to transport contraband or concealed aliens; (5) the driver's 'erratic behavior or obvious attempts to evade officers;' and (6) a heavily loaded car or an unusual number of passengers." United States v. Montero-Camargo, 208 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citing Brignoni-Ponce, 422 U.S. at 884-885). Again, "sometimes conduct that may be entirely innocuous when viewed in isolation may properly be considered in arriving at a determination that reasonable suspicion exists." Id. Thus, rather than viewing each factor in a vacuum, the Court should consider, as a whole, the panoply of factors in this case which clearly establish reasonable suspicion to stop the motor home. See Arvizu, 534 U.S. at 274-275 (the Supreme Court's Terry decision precludes this sort of "divide and conquer" analysis); see also Sokolow, 490 U.S. at 9 (holding that factors which if analyzed individually were "quite consistent with innocent travel", but collectively amounted to reasonable suspicion).

Here, there are a number of factors which, at a minimum, give rise to reasonable suspicion that criminal activity was afoot. These factors are outlined below.

**(a) *Known Area for Entry and Transportation of Illegal Aliens***

Agents Pitts and Devenport know that, based on their training and experience and intelligence reports, the Campo area of operations is often used to smuggle illegal aliens into the United States and to further their entry through transportation by vehicle.

**(b) *Close Proximity to the United States - Mexico Border***

As noted by Agent Devenport's report, the Campo area of operations is bounded to the south by the United States-Mexico border. In fact, the area where Agent Pitts and Devenport were performing anti-smuggling operations was approximately five miles east of the Tecate, California, Port of Entry and approximately five hundred yards north of the U.S./Mexico international border.

**(c) *The Driver's Attempts to Evade Officers and Erratic Behavior***

Agent Pitts observed the Jeep traveling eastbound on Highway 94 with its headlights off at night.

A logical inference can be drawn that the headlights were turned off at night in order to avoid detection and evade officers.

Agent Devenport observed the Jeep travel past his vehicle at a high rate of speed, and as soon as Agent Devenport turned around and drove behind the Jeep, the Jeep rapidly reduced its speed. In addition, the driver rapidly applied his brakes several times. The driver's "erratic behavior" provided another element of reasonable suspicion for Border Patrol agents to stop the Jeep.

**(d) *The Jeep Cherokee was "Riding Low in the Back"***

Agent Pitts observed several individuals attempting to conceal themselves by ducking down in the rear seat of the Jeep. In addition, Agent Devenport noted in his report that he observed the back end of the Jeep riding extremely low. Thus, a logical inference to be drawn from this observation is that something heavy, like several illegal aliens, is in the back of the Jeep.

Under the totality of the circumstances in this case, Agents Pitts and Devenport had reasonable suspicion to perform an immigration stop of the Jeep.

**2. Border Patrol Agents Had Probable Cause to Search the Vehicle**

The Fourth Amendment does not require that police obtain a warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity. *See* United States v. Ross, 456 U.S. 798, 804-809 (1982); see also United States v. Pinela-Hernandez, 262 F.3d 974, 978 (9th Cir. 2001) (finding that police had probable cause to search vehicle because previous surveillance indicated likelihood that vehicle contained contraband.) Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." See Illinois v. Gates, 462 U.S. 213, 238 (1983).

Here, Border Patrol agents conducting anti-smuggling operations in an area approximately five hundred yards from the U.S.-Mexico international border relied on their observations : (1) the driver was driving the Jeep at night without its headlights turned off; (2) the agents know the area where they observed the Jeep is an area used by alien smuggling organizations; (3) the agents observed individuals attempting to conceal themselves by ducking down in the rear seat of the Jeep; (4) the Jeep traveled at a high rate of speed, decelerated rapidly when agents began following behind, and tapped on the brakes several times; and (5) the agents noticed that the rear of the Jeep was riding low. Based on these

circumstances, there was a fair probability that the Jeep contained illegal aliens. As such, Border Patrol agents search of the Jeep complied with the Fourth Amendment, and its exceptions, and therefore, the Court should deny Defendants' motion to suppress.

**3. The Evidence Was Not the Fruit of the Poisonous Tree**

For the reasons discussed above, there was no Fourth Amendment violation. Therefore, the evidence seized and statements made by Defendant Martinez and the material witnesses was not the fruit of the poisonous tree, as Defendants contend. Thus, the evidence should not be suppressed.

**B. DEFENDANTS ARE NOT ENTITLED TO GRAND JURY TRANSCRIPTS**

Defendants seek the production of the grand jury transcripts yet fail to support the motion with anything even remotely approximating the requisite need to invade the sanctity of the grand jury's deliberations. As such, Defendants' motion should be denied.

The need for grand jury secrecy remains paramount unless the defendant can show "a particularized need" that outweighs the policy of grand jury secrecy. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985). Defendants have not suggested any ground on which proceedings before the grand jury would warrant dismissal of the indictment. It is well settled that the grand jury may indict someone based on inadmissible evidence or evidence obtained in violation of the rights of the accused. See United States v. Mandujano, 425 U.S. 564 (1976) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); United States v. Calandra, 414 U.S. 338, 343 (1974); United States v. Blue, 384 U.S. 251 (1966) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); Lawn v. United States, 355 U.S. 339 (1958); Costello v. United States, 350 U.S. 359, 363 (1956) ("neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act"); see also Reyes v. United States, 417 F.2d 916, 919 (9th Cir. 1969); Johnson v. United States, 404 F.2d 1069 (9th Cir. 1968); Wood v. United States, 405 F.2d 423 (9th Cir. 1968).

The Ninth Circuit has recognized the grand jury's unique history, secrecy, and role. See United States v. Navarro-Vargas, 408 F.3d 1184, 1188-1201 (9th Cir. 2005). Tracing the history of the grand jury from English common law, the Supreme Court has observed that grand jurors were not hampered

by technical or evidentiary laws, and traditionally could return indictments based not on evidence presented to them at all, but on their own knowledge of the facts. See Costello, 350 U.S. at 363. In light of this tradition, the Court held that "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act," and that grand jury indictments could not be challenged based on the insufficiency or incompetence of the evidence. Id. Rather, "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." Id. at 409.

There is no basis upon which to dismiss the indictment. Indeed, Defendants do not and cannot identify a single thing that might have occurred before the grand jury which could possibly warrant dismissal. In fact, Defendants merely cite to Federal Rule of Criminal Procedure 6(e)(1)(E)(ii). [Def. Medina Motion at 2.] As such, Defendants' request for transcripts should be denied.

**C. EVIDENCE WILL BE PRESERVED AND MAY BE INSPECTED**

The United States will preserve all evidence to which Defendants are entitled pursuant to the relevant discovery rules. However, the United States objects to Defendants' blanket request to preserve all physical evidence, absent an order from the Court.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendants an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendants' defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendants, including the vehicle, photographs and cellular telephones. The United States has made the evidence available to Defendants and Defendants' investigators and will comply with any request for inspection.

**D. DEFENDANT'S MOTION TO COMPEL DISCOVERY SHOULD BE DENIED**

As of the date of this Motion, the United States has produced 226 pages of discovery (including reports of the arresting officers and agents, criminal history reports, documents concerning Defendants' prior convictions and immigration history), one DVD-ROM containing videotaped statements of Defendants and material witnesses, and one CD-ROM containing the dispatch recordings. The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the

Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received **no** reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

**1. Statements by Defendants and Others**

The United States has and will continue to comply with Fed. R. Crim. P. 16(a)(1)(A) and 16(a)(1)(B). The United States has produced all of Defendants' statements that are known to the undersigned as of the date of this response. If the United States discovers additional oral or written statements that require disclosure under Fed. R. Crim. P. 16(a)(1)(A) or (B), such statements will be provided to Defendants.

The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendants that it does not intend to use at trial. Moreover, the United States will not produce rebuttal evidence in advance of trial. See Givens, 767 F.2d at 584.

Defendants also request an order directing the United States to permit her to inspect and copy "any statements of any co-defendant or co-conspirator, material witness, or confidential information that the government intends to offer against defendant under Fed. R. Evid. 801(d)(2)(E)." [Def. Martinez Motion at 3.] First, Defendants fail to cite a rule of discovery that requires the production of co-defendant or co-conspirator statements prior to trial. Rather, Defendants cite to the admissibility of such statements by relying on a rule of evidence. Second, and most importantly, the Jencks Act limits compulsory pretrial discovery of statements made by prospective government witnesses and makes them unavailable until such witnesses have testified at trial. United States v. Griffin, 659 F.2d 932, 936 (9th

Cir.1981). Thus, even assuming the co-defendants were government witnesses, the Jencks Act provides that the United States would not have to produce any such statements prior to their direct testimony at trial. United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Walk, 533 F.2d 417 (9th Cir. 1975) (holding that the Jencks Act prohibits the pretrial disclosure of witness' statements, even when such statements contain quotations allegedly attributable to defendant, and that such statements may only be produced in accordance with provisions of the Jencks Act); see also United States v. Percevault, 490 F.2d 126 (2d Cir. 1974) (holding that defendant's pretrial discovery of the statements of co-defendants or co-conspirators is precluded under the Jencks Act). As such, the United States objects to this request. The United States will comply with its obligations under the Jencks Act.

**2. Arrest Reports, Notes and Dispatch Tapes**

As discussed above, the United States will comply with comply with Fed. R. Crim. P. 16(a)(1)(A) and (B). The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United States will supplement its discovery.

The United States objects to Defendants' request for the production of any rough notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary because they are not "statements" within the meaning of the Jencks Act unless they contain a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. See discussion infra Part III.A.11; see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). The production of agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659 F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers the rough notes of its agents to be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

**3. Defendants' Prior Record**

The United States has already provided each Defendant with a copy of his criminal record and related court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

**4. Documents and Tangible Objects**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendants an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendants' defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendants. The United States need not, however, produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**5. Reports of Scientific Tests or Examinations**

The United States will provide Defendants with any scientific tests or examinations, in accordance with Fed. R. Crim. P. 16(a)(1)(F).

**6. Expert Witnesses**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendants with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

**7. *Brady* Material**

The United States has complied and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

The United States will also comply with its obligations to disclose exculpatory evidence under Brady. Furthermore, impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (quotations omitted). However, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

Defendants also request evidence tending to show (1) bias or prejudice against Defendants; (2) motive to falsify or distort his/her testimony; (3) inability to perceive, remember, communicate, or tell the truth; or (4) has used narcotics or other controlled substances, or has been an alcoholic. [Def. Martinez Motion at 5.] The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum. At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendants or that has a motive to falsify or distort his or her testimony. The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

**8. Request for Preservation of Evidence**

The United States will preserve all evidence pursuant to an order issued by this Court. The United States objects to an overbroad request to preserve all physical evidence. The United States recognizes its obligation to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the United States, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001).

The United States will make every effort to preserve evidence it deems relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the United States that results in actual prejudice to the Defendants. See Illinois v. Fisher, 504 U.S. 544 (2004); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle,

322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**9. Any Proposed 404(b) or 609 Evidence**

The United States has complied and will continue to comply with its obligations under Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid."). The United States has already provided Defendants with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendants with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

**10. Witness Addresses**

The United States objects to Defendants' request for witness addresses and phone numbers. Defendants are not entitled to the production of addresses or phone numbers of possible witnesses for the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974). None of the cases cited by Defendants, nor any rule of discovery, requires the United States to disclose witness addresses. There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call. Therefore, the United States will not comply with this request.

The United States will produce the names of witnesses it intends to call at trial. Defendants have already received access to the names of potential witnesses through the discovery sent to his counsel. The United States is not aware of any individuals who were witnesses to Defendants' offense except the law enforcement agents who apprehended her and the material witnesses concealed in the vehicle. The names of these individuals have already been provided to Defendants.

**11. Jencks Act Material**

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or

otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

**12. *Henthorn* Materials**

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

Defendants' request that the specific prosecutor in this case review the personnel files is unwarranted and unnecessary. Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30- 31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting

designated representatives of the relevant agencies to conduct the reviews. The United States opposes the request for an order that the prosecutor personally review the personnel files.

**13. <u>Giglio Information</u>**

The United States incorporates by reference Response 7 above, and will comply with its obligations to disclose impeachment evidence under <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum. At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendants or that has a motive to falsify or distort his or her testimony. The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired

**14. <u>Production of A-Files</u>**

The United States objects to any request by Defendants to inspect the A-File associated with and any material witness. Defendant may review the A-File associated with him through a Freedom of Information Act request. Even if Defendants could not ascertain the A-File through such a request, the A-File is not Rule 16 discoverable information. The United States will produce documents from Defendant's A-File it intends to use in its case-in-chief. Evidence is material under <u>Brady</u> only if there is a reasonable probability that had it been disclosed to the defense, the result of the proceeding would have been different. <u>See</u> <u>United States v. Antonakeas</u>, 255 F.3d 714, 725 (9th Cir. 2001). However, Defendants has not shown how documents in the A-File are material. Finally, Defendants do not own the A-File. It is an agency record. <u>Cf.</u> <u>United States v. Loyola-Dominguez</u>, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File documents are admissible as public records). Should the Court order inspection of relevant documents from the A-File, the United States will facilitate the inspection as it does in other cases.

**15. <u>Unredacted Copy of I-831</u>**

Defendants' request for "unredacted copy of the I-831" is nothing more than a baseless ploy to obtain personal information of material witnesses and confidential agency data that Defendants are not

entitled to under the rules of discovery. [Def. Medina Motion at 3.] The United States has properly produced a redacted version of the I-831 investigative report to Defendants. Notably, Defendants have provided no basis in law for this request. Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. As such, the Court should deny this request because it is improper.

**16. Residual Request**

As already indicated, the United States will continue to comply with its discovery obligations in a timely manner.

**E. LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendants' request to file further motions if they are based on new discovery or other information not available to Defendants at the time of this motion hearing.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests the Court deny Defendants' Motions to Suppress Evidence, Produce Grand Jury Transcripts, Preserve and Inspect Evidence, Compel Discovery, and Grant Leave to File Further Motions, unless unopposed.

DATED: July 28, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br>v.<br>ROBERTO JAYME MEDINA (1),<br>JOSE MARTINEZ-GONZALEZ (2),<br>Defendants. | Criminal Case No. 08CR2125-WQH<br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the **United States' Response in Opposition to Defendants' Motions to Suppress Evidence, Produce Grand Jury Transcripts, Preserve and Inspect Evidence, Compel Discovery, and Grant Leave to File Further Motions**; together with a Statement of Facts and Memorandum of Points and Authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

1. Erick Guzman
   Federal Defenders of San Diego, Inc.
   225 Broadway, Suite 900
   San Diego, California 92101
   Tel: (619) 234-8467
   Email: erick_guzman@fd.org
   *Attorney for Defendant Medina*

2. Holly Hanover
   Law Office of Holly Hanover
   1016 La Mesa Avenue
   Spring Valley, California 91977
   Tel: (619) 295-1264
   Email: netlawyr@aol.com
   *Attorney for Defendant Martinez*

A hard copy will be delivered to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2008.

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney